```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

JONI O'BRIEN,

              Plaintiff,

vs.                                Case No. 13-1150-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

              Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 11, 2011, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 11-21). Plaintiff alleges that she had been disabled since April 2, 2008 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 13). At step one, the ALJ found that

plaintiff did not engage in substantial gainful activity from April 2, 2008 through December 31, 2009 (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: morbid obesity, history of left arm fracture, degenerative joint disease of the lumbar spine, dysthymic disorder, anxiety disorder not otherwise specified with obsessive compulsive, panic and generalized anxiety features, mixed personality disorder and history of polysubstance abuse dependence currently in remission (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 19). At step five, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy (R. at 20). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Did the ALJ err in the weight given to the opinions of treating ARNP (advanced registered nurse practitioner) Murphy?**

ARNP Murphy prepared a letter dated June 9, 2010 stating that:

> I do not see Joni as being able to hold a job at the current time, or in the near future. She continues to be quite depressed and anxious, and has a number of psychological issues including obsessions,

> anxiety, poor recent memory, and
> distractibility…she continues to have a
> great deal of anxiety surrounding a number
> of life issues.  She continue to wash her
> hands obsessively, and often rinses her
> hands with bleach.  She also checks and
> rechecks light switches and appliances.

(R. at 329, 341).  On February 2, 2011, ARNP Murphy prepared a medical source statement-mental, in which she opined that plaintiff was extremely[1] limited in 13 categories, markedly limited in 3 categories, moderately limited in 2 categories, and not significantly limited in 2 categories (R. at 348-349).  The ALJ gave little weight to these opinions because they were inconsistent with the longitudinal record and the progress notes.  The ALJ noted that GAF scores were 60 initially, and then increased to 80, indicting only a slight impairment.[2] [3]  The

---

[1] "Extremely" is defined on the form as meaning an impairment level which precludes useful functioning in this category (R. at 348).

[2] Plaintiff's GAF was listed as 60 by ARNP Murphy on Nov. 12, 2008, Feb. 3, 2009, April 7, 2009 and May 20, 2009 (R. at 307, 304, 303, 302).  Plaintiff's GAF rose to 75 on July 7, 2008, and remained there on October 6, 2009, Jan. 5, 2010, Feb. 10, 2010, April 7, 2010 and June 8, 2010  (R. at 301, 300, 299, 298, 297, 345).  ARNP Murphy indicated that her GAF was at 80 on Oct. 26, 2010 and Dec. 21, 2010 (R. at 344, 343).

[3] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 71-80: **If symptoms are present, they are transient and expectable reactions to psychological stressors** (e.g., difficulty concentrating after family argument);  **no more than slight impairment in social, occupational, or school functioning** (e.g., temporarily falling behind in schoolwork).
>
> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships.**
>
> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers) .

ALJ stated that the treatment note of June 8, 2010 indicated that plaintiff needed only support and maintenance (R. at 18).

In making his RFC findings, the ALJ gave great weight to the opinions of two non-examining psychological consultants. Dr. Bergmann-Harms opined on April 28, 2010 that plaintiff was moderately limited in 5 categories (R. at 323-325); those limitations are reflected in the ALJ's RFC findings (R. at 15). Dr. Fantz affirmed the opinions of Dr. Bergmann-Harms on September 9, 2010 after his review of the evidence in the file (R. at 330).

The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 at *1. "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1)-(2); 20 C.F.R. § 404.1502.

An ARNP is not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a). However, evidence from "other medical sources," including an ARNP, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function. Opinions from other medical sources are important and should be evaluated on key issues such as

---

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.

   The ALJ clearly relied on the GAF scores as a basis for giving little weight to the opinions of ARNP Murphy.  Plaintiff's GAF scores from July 8, 2009 through December 21, 2010 indicate only slight impairments in social, occupational, or school functioning.  Dr. Bergmann-Harms, in her very detailed narrative, noted the GAF scores from 60-75 (R. at 320), and also stated that in February 2010, ARNP Murphy noted that plaintiff only needed support and maintenance (R. at 320, 298).  GAF scores may be of considerable help to the ALJ in formulating the RFC, although they are not essential to the RFC's accuracy.  Harper v. Colvin, 528 Fed. Appx. 887, 891 (10th Cir. July 1,

2013); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). In making his mental RFC findings, the ALJ did not err by giving greater weight to the opinions of acceptable medical sources, especially in light of the fact that the treatment notes and the GAF scores did not indicate that plaintiff was extremely limited in numerous areas of functioning. Furthermore, unlike Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), this is not a case in which the ALJ only relied on a check-the-box form with little or no explanation for the conclusions reached. Dr. Bergmann-Harms prepared very detailed notes summarizing the evidence and the basis for her opinions (R. at 320, 325). By contrast, the court would note that ARNP Murphy provided no explanation of the basis for her opinions on the medical source statement-mental (R. at 348-349).

**IV. Did the ALJ err by failing to comply with SSR 96-8p and in the evaluation of opinions of non-examining medical sources when making his physical RFC findings?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each

9

conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th

Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The only medical opinions regarding plaintiff's physical limitations are those of Dr. Eades, a non-examining physician who prepared a physical RFC on September 13, 2010 (R. at 331-338). The ALJ's RFC findings adopted the physical limitations set forth by Dr. Eades (R. at 15). Dr. Eades provided a summary of the evidence and evaluated plaintiff's credibility as a part of his assessment. Dr. Eades stated that plaintiff's alleged limitations are out of proportion to the objective findings (R. at 338). The ALJ's opinions regarding plaintiff's credibility and activities of daily living are consistent with the opinions expressed by Dr. Eades. Furthermore, the court would note that the ALJ can engage in less extensive analysis where none of the record medical evidence conflicts with the ALJ's physical RFC findings. See Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009). The court finds that substantial evidence supports the ALJ's physical RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 5th day of August 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge